1  Aurora Talavera, State Bar No. 159778
   THE AURORA LAW GROUP.
2  633 West Fifth Street, Suite 26072
   Los Angeles, California  90071
3  Telephone: (213) 223-2085
   Facsimile: (213) 596-3737
4  Email: aurora@theauroralawgroup.com

5  [Proposed] Attorneys for
   CARLOS BANUELOS
6  Debtor and Debtor in Possession

7

8                 UNITED STATES BANKRUPTCY COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                      RIVERSIDE DIVISION

11

12  In re                          ) CASE NO.  6:11 13000CB
                                    )
13  CARLOS BANUELOS, an             ) Chapter 11
    individual,                     )
14                                  ) NOTICE OF MOTION AND MOTION TO
                         Debtor.    ) DETERMINE SECURED VALUE OF "RANCHO
                                    ) CUCAMONGA" REAL PROPERTY OF THE
15                                  ) ESTATE AND TO STAY POST PETITION
                                    ) PAYMENTS ; MEMORANDUM
16                                  ) OF POINTS AND AUTHORITIES ; AND
                                    ) DECLARATIONS OF CARLOS BANUELOS AND
17                                  )  NICK GREENHAGEN AND EXHIBIT (S) IN
                                    ) SUPPORT THEREOF
18                                  )
                                    ) Date:  August 23, 2011
19                                  ) Time:  2:00 p.m.
                                    ) Place: Courtroom  303
20                                  )
                                    )
21                                  )
                                    )

22

23  TO CREDITORS CITI MORTGAGE AND CHASE MORTGAGE

24      PLEASE TAKE NOTICE that on August 23, 2011, at Courtroom 303, or as soon as

25  thereafter as the matter may be heard, in courtroom 303 of the United States Bankruptcy Court,

26  located at 3420 Twelfth Street, Riverside, CA 92501, CARLOS BANUELOS the Chapter 11

27

28          MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY

                                    1

1   debtor and debtor in possession proceeding before the Court ("Mr. Banuelos" or "Debtor"), by

2   and through his proposed bankruptcy counsel, Aurora Talavera of The Aurora Law Group, A

3   Professional Corporation, will move this Court for an order determining the value of the

4   residential real property located at 8549 San Jacinto Court, Rancho Cucamonga, CA 91730

5   (APN 0207-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 (the "Rancho Cucamonga residence") to be $180,000.00 based upon

6   an appraisal as of January 23, 2011, and staying post petition payments by Debtor and to treat

7   the claims of junior lienholder, Chase Mortgage Corporation ("Chase") as wholly unsecured on

8   the junior lien for purposes of plan confirmation.

9        This motion will be based upon the grounds that the value of the Rancho Cucamonga

10  property, upon which the senior encumbrance of CitiMortgage and the junior encumbrance of

11  Chase Mortgage are recorded as liens with the Riverside County Recorder's office, has declined

12  such that the value of the Rancho Cucamonga residence does not have an equity adequate to

13  fully secure all the encumbrances, resulting in the junior lien holders' claim held by Chase

14  Mortgage being 100% unsecured and not entitled to treatment under Debtor's proposed chapter

15  11 plan of reorganization as secured creditors for the full amount of its purported claims.

16       This motion is brought pursuant to 11 U.S.C. sections 506 (a), 1123 (b) (5), Rule 3012 of

17  the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 901-1, and will be based

18  on this notice of motion and motion, the attached memorandum of points and authorities, the

19  declarations of CARLOS BANUELOS, files concurrently with this motion, and the exhibits

20  attached thereto, the Court's records and files in the instant chapter 11 case and on such other

21  and further evidence as may be brought to the attention of the Court at or before the time of the

22  hearing of his motion.

23

24

25

26

27

28

*MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY*

2

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1 (f):

> [E]ach interested party opposing, joining, or responding to the motion must file and serve on the moving party and the United States trustee not later than 14 days before the date designated for the hearing hearing:
>
>> (1) A complete written statement of all reasons in opposition thereto or in support or joinder thereof, declarations and copies of all photographs and documentary evidence on which the responding party intends to rely, and any responding memorandum of points and authorities. The opposing papers must advise the adverse party that any reply to the opposition must be filed with the court and served on the opposing party not later than 7 days prior to the hearing on the motion; or
>>
>> (2) A written statement that the motion will not be opposed.

Pursuant to Local Bankruptcy Rule 9013-1 (h):

> Papers not timely filed and served may be deemed by the Court to be consent to the granting or denial of the motion, as the case may be.

Dated: July 15, 2011

THE AURORA LAW GROUP
A Professional Corporation

By: _Aurora Talavera_
AURORA TALAVERA
[Proposed] Attorney for CARLOS BANUELOS

*MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

### INTRODUCTION

This motion concerns the valuation of residential real property located at 8549 San Jacinto Court, Rancho Cucamonga, CA 91730  (APN 0207-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 (the Rancho Cucamonga residence") owned by CARLOS BANUELOS, who is the Chapter 11 debtor and debtor in possession proceeding before the Court ("Mr. Banuelos" or "Debtor").

CARLOS BANUELOS originally purchased the Rancho Cucamonga residence in January 2003 for the price of $178,000.00. He subsequently secured a second debt against the Rancho Cucamonga residence, through Chase Mortgage, in the amount of $70,447.55. The two deeds of trust in favor of Citi Mortgage and Chase Mortgage Corporation are recorded as liens with the Riverside County Recorder's Office. See Schedules A and D IN Debtor's bankruptcy schedules, the Declarations of CARLOS BANUELOS, and appraiser, Nick Greenhagen appended hereto.

At this time, due in part to the general decline in real estate values in Southern California which have substantially affected the area in which the Rancho Cucamonga residence is located, the value of this specific Rancho Cucamonga residence has declined in value, such it does not secure the two deeds of trust in favor of Citi Mortgage and Chase Mortgage Corporation. In making this motion, CARLOS BANUELOS relies upon the Appraisal Report that is attached as Exhibit "A" to the Declaration of Nick Greenhagen ("Appraiser's Declaration"), appended hereto. Furthermore, as set forth in the Declaration of CARLOS BANUELOS, CARLOS BANUELOS relies on his understanding as a property owner that the value of the Rancho Cucamonga residence, as set forth in his Schedules A and D, and research with Zillow, is comparable to other property values in the area, as of the commencement of this bankruptcy case which value Mr. Banuelos reasonably believes may continue to decline as of the confirmation of

*MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY*

his Chapter 11 Plan. CARLOS BANUELOS therefore believes a valuation of $180,000.00 is fair

and reasonable pursuant to 11 U.S.C. sections 506 (a) and 1123 (b) (5); *Gold Coast Asset*

*Acquisition, L.P. v. 1441 Veteran St. Co. (In re 1441 Veteran St. Co.)*, 144 F.3d 1288 (9th Cir.

1998), wherein the Ninth Circuit concluded that a lien in Chapter 11 cases can be stripped

through a confirmed chapter 11 plan of reorganization.

## II.

## BACKGROUND FACTS

1.      Mr. Banuelos is an individual debtor proceeding before the Court under Case No.

6:11bk 13000CB, having caused to be filed his individual voluntary petition for reorganization

under chapter 11 of Title 11 of the United States Code on January 28, 2011 ("Petition Date").

2.   The Court has jurisdiction of this contested matter pursuant to 28 U.S.C.

Section 1334 and 157, and has exclusive jurisdiction of the real property which is the subject of

this motion (i.e., the Rancho Cucamonga residence).

3.      CARLOS BANUELOS purchased the Rancho Cucamonga residence, in January

2003 for the price of $178,000.00.  He subsequently obtained a junior debt against the Rancho

Cucamonga residence, through Chase Mortgage in the amount of $70,447.55.

4.   The Rancho Cucamonga residence is encumbered by the following deeds of

trust:

(a) a first priority deed of trust in favor of Citi Mortgage which secures a promissory

note under which Mr. Banuelos owed $233,326.10 as of the Petition Date; and

(b) a second priority deed of trust in favor of Chase Mortgage which secures a

promissory note under which Debtor owed $70,447.55 as of the Petition Date (See

Proof of Claim filed);

5.      At this time, due in part to the general decline in real estate values in Southern

California, which has substantially affected the area in which the Rancho Cucamonga residence is

*MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY*

1  located, the value of debtor's Rancho Cucamonga residence has declined in value, and does not

2  support the junior lien against it held by Chase Mortgage.

3       6.     The fair market value of the Rancho Cucamonga residence as of the Petition Date

4  was $180,000.00. See Appraisal and Declaration of Nick Greenhagen, a true and correct copy of

5  which is attached as Exhibit A hereto.

6       7.     Based upon a $180,000.00 fair market value of the Rancho Cucamonga

7  residence, there is not sufficient equity to secure the encumbrances recorded against the Rancho

8  Cucamonga residence, resulting in junior liens held by Chase Mortgage being 100% unsecured

9  and not entitled to treatment under Debtor's proposed Chapter 11 plan of reorganization as a

10  secured creditor for the full amount of their purported claims.

11  III.

12  LEGAL ANALYSIS

13  A.  The Rancho Cucamonga residence Must Be Valued For Purposes of Chapter 11 Plan

14      Confirmation

15  Bankruptcy Code section 506 (a) provides, in pertinent part:

16

17  > An allowed claim of a creditor secured by a lien on property in which the estate has an interest … is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, … and is an unsecured claim to the extent that the value of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. [Emphasis added]

18

19

20

21      In *in re Taffi*, 144 B.R> 105, 109 (Bankr. C.D. Cal. 1992), the Honorable Vincent P.

22  Zurzolo considered the factors relevant to a determination of a motion to determine the secured

23  portion of a claim. In that decision, Judge Zurzolo reasoned that "[i]t would appear from the

24  above quoted language that the value of a lien creditor's interest in a collateral that is property of

25  a bankruptcy estate must be determined after considering two factors: (1) the purpose of the

26  valuation, and (2) the proposed disposition or use of the property."

27

28  *MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY*

1    The Ninth Circuit in *In re 1441 Veteran St. Co.*, 144 F.3d 1288, 1292 (9th Cir. 1998),

2    concluded that when the bankruptcy court determines the value of the secured property under

3    section 506 (a), such valuation must be linked to some identified purpose such as a chapter 11

4    plan of reorganization. In this decision, the court also discussed the bankruptcy court authority to

5    lien strip in Chapter 11 cases where the plan is not confirmed and concluded that a lien may be

6    lien stripped, with a res judicata effect, through a confirmed chapter 11 plan of reorganization.

7    Judge Zurzolo revisited his reasoning in *Taffi* in the case of *In re Crain*, 243 B.R. 75

8    (Bankr. C.D. 1999), in which he held that valuation of real property collateral will be made as of

9    the date of confirmation, and not as of the commencement date.

10    In *Zimmer v. PSB Lending*, 313 F.3d 1220 (9th Cir. 2002), the Ninth Circuit held that "…

11    more simply, a claim such as mortgage is not a "secured claim" to the extent that it exceeds the

12    value of the property that secures it. Under the Bankruptcy Code, "secured claim" is thus a term

13    of art; not every claim that is secured by a lien on property will be considered a "secured claim."

14    [*Id*. At 1223]

15

16    Section 1123 (b) (5) of the Bankruptcy Code provides that a chapter 11 plan may

17    "modify the rights of secured claims, other then a claim secured only by a security interest in real

18    property that is the debtor's principal interest." Confirmed plan binds any creditor whether or not

19    such creditor has accepted the plan and the property dealt with the plan is "free and clear of all

20    claims and interest" of any creditors. 11 U.S.C. §§ 1141 (a) and 1141 (c).

21    At this time, due in part to the general decline in real estate values in Southern California,

22    which has substantially affected the area in which the Northridge residence is located, the value

23    of the Rancho Cucamonga residence has declined in value, and does not support the deed of trust

24    liens of Chase Mortgage.  In making this motion, CARLOS BANUELOS relies upon the

25    Appraisal Report attached as Exhibit "A" to the Declaration of Nick Greenhagen, appended

26    hereto, an assessment pursuant to the latest value under Zillow and his understanding of the value

27

28    *MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY*

1    of the Rancho Cucamonga property as the owner of the Rancho Cucamonga residence (*see*,

2    Schedules A and D) which he reasonably believes may continue to decline after the confirmation

3    of their Chapter 11 Plan. CARLOS BANUELOS therefore believes a valuation of $180,000.00 is

4    fair and reasonable for the purpose of valuation of the Rancho Cucamonga residence and

5    classification of Chase Mortgage as unsecured creditor on its junior lien in Debtor's proposed

6    chapter 11 plan.

7        B.    The Valuation Of The Rancho Cucamonga residence Is Necessary For Debtor's Effective

8            Reorganization And He Should Not Be required To Make Post Petition Payments

9            As provided in Section 506 (a) of the Bankruptcy Code, valuation of the secured interest

10   should take place "… in conjunction with any hearing… on a plan affecting such creditor's

11   interest."

12           This motion is made in conjunction with Debtor's proposed Chapter 11 plan of

13   reorganization. Debtor's proposed Chapter 11 plan of reorganization.  Debtor, CARLOS

14
     BANUELOS has demonstrated under Section 506 (a) that the value of the Rancho Cucamonga
15
     residence is less than the two deeds of trust lien of Citi Mortgage and Chase Mortgage, and that
16
     reorganization is in prospect. Accordingly, Chase Mortgage is not entitled to post petition
17
18   payments on its junior lien. [See, United Savings Association Of Texas v. Timbers Of Inwood

19   Forest Association, Limited, 484 U.S. 365, 108 S, Ct, 626. 98 L.Ed.2d 740 (1998)]

20                                        IV.

21                                    CONCLUSION

22           Debtor, CARLOS BANUELOS respectfully requests that the Court grants this motion,

23   and value the Rancho Cucamonga residence at $180,000.00, deeming Chase Mortgage as

24   unsecured creditor on its junior lien for the purpose of treatment under the Debtor's proposed

25   Chapter 11 Plan and that he be relieved from making any post petition payments to Chase

26   Mortgage and for such other and further relief as the Court may deem just and proper.

27

28                    *MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY*

1 | Dated: July 15, 2011

THE AURORA LAW GROUP
A Professional Corporation

2 | By: *[signature]* Aurora Talavera

3 | AURORA TALAVERA
[Proposed] Attorney for CARLOS BANUELOS

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY*

### DECLARATION OF CARLOS BANUELOS

I, CARLOS BANUELOS, declare:

1.   I am a debtor proceeding under Case No. 6:11–bk –13000-CB, having caused to be filed an individual voluntary petition for reorganization under chapter 11 of the Title 11 of the United States Code on January 28, 2011 (Petition Date").

2.   As set forth in the bankruptcy schedules, caused to be filed by me, I am the owner of a condominium located at 8549 San Jacinto Court, Rancho Cucamonga, CA 91730 (APN 0207-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 ("Rancho Cucamonga residence"). Please see Schedule A from my bankruptcy schedules.

3.   The bankruptcy petition was filed to reorganize my financial affairs and restructure the debt against the Rancho Cucamonga residence.

4.   I purchased the Rancho Cucamonga residence in January 2003 for the price of $178,000.00. I subsequently obtained a secondary debt against the Rancho Cucamonga residence, through Chase Mortgage, in the amount of $70,447.55.

5.   As set forth in the bankruptcy schedules caused to be filed by me, the Rancho Cucamonga residence is encumbered by the following liens:

(a) a first priority deed of trust in favor of Citi Mortgage which

secures a promissory note under which I owed $233,326.10 as of the Petition Date;

and

(b) a second priority deed of trust in favor of Chase Mortgage which secures a

promissory note under which I owed $70,447.55 as of the Petition Date per the Proof

of claim filed by Chase Mortgage;

6.   At this time, due to the general decline in real estate values in Southern California,

which has affected the area in which the Rancho Cucamonga residence is located, the

*MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY*

value of this Rancho Cucamonga residence has declined in value, and does not support the two liens of Citi Mortgage and Chase Mortgage.

7. I believe the fair market value of the Rancho Cucamonga residence as of the Petition date was $180,000.00. See, Schedule A, and appraisal of Nick Greenhagen, a true and correct copy of which is attached as Exhibit A hereto. This valuation is also based upon my research of Zillow and general knowledge of real estate values in the area immediately adjacent to this Rancho Cucamonga residence.

8. Based upon my opinion of value of the Rancho Cucamonga residence, I classified Chase Mortgage as general unsecured creditor on its junior lien under my proposed Chapter 11 plan.

9. Based upon my opinion that the Rancho Cucamonga residence has a current fair market value of $180,000.00, together with the contribution of my post petition income from earnings, I will be able to fund my Chapter 11 Plan. Please see Schedules I and J from my Bankruptcy Schedules.

10. I have personal knowledge of the facts stated herein, except where stated on information and belief that such facts are true and correct. If called and sworn as a witness, I could and would competently testify to the above.

Executed this _15_ day of July, 2011, at Rancho Cucamonga, California.

I declare under penalty of perjury that the following is true and correct.

CARLOS BANUELOS

### DECLARATION OF NICK GREENHAGEN

I.    NICK GREENHAGEN, declare:

1.  I am a real estate appraiser, licensed by the State Of California, State California # AR 041134.

2.  I specialize in the appraisal of single family residences in the Riverside and San Bernardino area, Riverside County. I am employed by Nick Greenhagen, 5811 Boca Raton, Fontana, CA 92336. Attached as Exhibit A hereto is a true and correct copy of my Appraisal.

3.  In January 2011, I was employed by CARLOS BANUELOS to provide him with my opinion of value of that certain residential property located at 8549 San Jacinto Court, Rancho Cucamonga, CA 91730  (APN 0207-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) ("Rancho Cucamonga residence").

4.  Attached as Exhibit A hereto is a true and correct of the Appraisal Report I prepared for the Rancho Cucamonga residence. As set forth in the Appraisal Report, it is my opinion that the estimated fair market value of the Rancho Cucamonga residence is $180,000.00 as of January 23, 2011.

5.  I have personal knowledge of the facts stated herein, except where stated on information and belief, and where so stated, I am informed and believe that such facts are true and correct. If called and sworn as a witness, I could and would competently testify to the above.

Executed this __13__th day of July, 2011, at Fontana, California.

I declare under penalty of perjury that the foregoing is true and correct.

NICK GREENHAGEN

*MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "A"
# APPRAISAL REPORT



# INVOICE

**FROM:**

NICK GREENHAGEN
5811 BOCA RATON WAY
FONTANA, CA 92336

Telephone Number:          Fax Number:

| | |
|---|---|
| | 20110124 |
| | 1/24/2011 |

**TO:**

CARLOS BANUELOS JR
8549 SAN JACINTO CT
RANCHO CUCAMONGA, CA 91730

Telephone Number:          Fax Number:
Alternate Number:          E-Mail:

Internal Order #:
Lender Case #:
Client File #:
Main File # on form:   20110124
Other File # on form:
Federal Tax ID:
Employer ID:

**Lender:** CARLOS BANUELOS JR               **Client:** CARLOS BANUELOS JR
**Purchaser/Borrower:** N/A
**Property Address:** 8549 SAN JACINTO CT
**City:** RANCHO CUCAMONGA
**County:** SAN BERNARDINO          **State:** CA          **Zip:** 91730-4338
**Legal Description:** TRACT 12621 LOT 77 AND INT IN COMMON AREA

| | |
|---|---:|
| Full Appraisal | 200.00 |
| | |
| **SUBTOTAL** | 200.00 |

| | | | |
|---|---|---|---:|
| Check #: | Date: 1/23/2011 | Description: CHECK | 200.00 |
| Check #: | Date: | Description: | |
| Check #: | Date: | Description: | |
| | | **SUBTOTAL** | 200.00 |
| | | **TOTAL DUE** | $    0 |

Form NIV5 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE
Golden State Certified Appraisers (909)376-9855

Golden State Certified Appraisals 20111254-04553   Main File No. 20110124   Page #1

# Individual Condominium Unit Appraisal Report
File # 20110124

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| Property Address 8549 SAN JACINTO CT | City RANCHO CUCAMONGA | State CA | Zip Code 91730-4338 |
|---|---|---|---|

Borrower N/A   Unit # N/A   Owner of Public Record BANUELOS CARLOS JR

Legal Description TRACT 12621 LOT 77 AND INT IN COMMON AREA   County SAN BERNARDINO

Assessor's Parcel # 0207-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   Tax Year 2010   R.E. Taxes $ 873.55

Project Name CUCAMONGA MOUNTAIN SHADOWS   Phase # 1   Map Reference 602-F3   Census Tract 0021.00

Occupant ☒ Owner ☐ Tenant ☐ Vacant   Special Assessments $ N/A   HOA $ 184 ☐ per year ☒ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) CLIENT PURPOSES

Lender/Client CARLOS BANUELOS JR   Address 8549 SAN JACINTO CT, RANCHO CUCAMONGA, CA

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?   ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).   DATA SOURCES USED INCLUDED REALQUEST, MLS AND PUBLIC RECORDS.

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.   N/A

Contract Price $ N/A   Date of Contract N/A   Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s) N/A

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?   ☐ YES ☐ NO

If Yes, report the total dollar amount and describe the items to be paid.   N/A

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | Condominium Unit Housing Trends | | | Condominium Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☒ Increasing ☐ Stable ☐ Declining | | | PRICE | AGE | One-Unit | 95 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | $ (000) | (yrs) | 2-4 Unit | % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | 125 Low | 20 | Multi-Family | % |
| Neighborhood Boundaries   AREA IS BOUNDED BY: FOOTHILL BLVD-NORTH, VINEYARD AVE-EAST, | | | | 205 High | 28 | Commercial | 5 % |
| 8TH ST-SOUTH, GROVE AVE-WEST. | | | | 175 Pred. | 26 | Other | % |

Neighborhood Description   A GOOD QUALITY CONDO STYLE DEVELOPMENT FEATURING A POOL AND COMMON AREAS, CONSISTING OF UNITS THAT WERE BUILT IN 1987. SUBJECT NEIGHBORHOOD IS LOCATED WITHIN CLOSE PROXIMITY TO MOST LOCATIONAL AMENITIES AND THIS AREA IS MAINTAINED IN GOOD CONDITION.

Market Conditions (including support for the above conclusions)   See attached addenda.

Topography LEVEL   Size UNITS/CNDO   Density TYPICAL FOR CONDO   View RESIDENTIAL

Specific Zoning Classification R-3   Zoning Description CONDO (0530)

Zoning Compliance ☒ Legal ☐ Legal Nonconforming – Do the zoning regulations permit rebuilding to current density? ☐ Yes ☐ No
☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?   ☒ Yes ☐ No   If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street ASPHALT | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley NONE | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 06071C8630H   FEMA Map Date 8/28/2008

Are the utilities and off-site improvements typical for the market area?   ☒ Yes ☐ No   If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?   ☐ Yes ☒ No   If Yes, describe

Data source(s) for project information   REALQUEST/MLS

Project Description ☐ Detached ☒ Row or Townhouse ☐ Garden ☐ Mid-Rise ☐ High-Rise ☐ Other (describe)

| General Description | | Subject Phase | | Project Completed | | Project Description | |
|---|---|---|---|---|---|---|---|
| # of Stories 2 | Exterior Walls STC; AG | # of Units 99 | # of Phases 1 | # of Planned Phases N/A |
| # of Elevators 0 | Roof Surface TL; AVG | # of Units Completed 99 | # of Units 99 | # of Planned Units N/A |
| ☒ Existing ☐ Proposed | Total # Parking 2 | # of Units For Sale 3 | # of Units for Sale 3 | # of Units for Sale N/A |
| ☐ Under Construction | Ratio (spaces/units) 2/1 | # of Units Sold 96 | # of Units Sold 96 | # of Units Sold N/A |
| Year Built 1987 | Type GARAG | # of Units Rented 6 | # of Units Rented 6 | # of Units Rented N/A |
| Effective Age 10 | Guest Parking STREET | # of Owner Occupied Units 90 | # of Owner Occupied Units 90 | # of Owner Occupied Units N/A |

Project Primary Occupancy ☒ Principle Residence ☐ Second Home or Recreational ☐ Tenant

Is the developer/builder in control of the Homeowners' Association (HOA)?   ☐ Yes ☒ No

Management Group - ☒ Homeowners' Association ☐ Developer ☐ Management Agent - Provide name of management company.

Does any single entity (the same individual, investor group, corporation, etc.) own more than 10% of the total units in the project?   ☐ Yes ☒ No   If Yes, Describe

Was the project created by the conversion of existing building(s) into a condominium?   ☐ Yes ☒ No   If Yes, describe the original use and date of conversion.

Are the units, common elements, and recreation facilities complete (including any planned rehabilitation for a condominium conversion)?   ☒ Yes ☐ No   If No, describe

Is there any commercial space in the project?   ☐ Yes ☒ No   If Yes, describe and indicate the overall percentage of the commercial space.

Freddie Mac Form 465 March 2005   Page 1 of 6   Fannie Mae Form 1073 March 2005

Form 1073 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Individual Condominium Unit Appraisal Report
File # 20110124

Describe the condition of the project and quality of construction.  GOOD QUALITY LOW DENSITY TYPE OF DEVELOPMENT. DEVELOPMENT IS MAINTAINED IN GOOD CONDITION.

Describe the common elements and recreational facilities.  DEVELOPMENT FEATURING WELL MAINTAINED COMMON AREAS AND POOL.

Are any common elements leased to or by the Homeowners' Association?  ☐ Yes ☒ No  If Yes, describe the rental terms and options.

Is the project subject to a ground rent?  ☐ Yes ☒ No  If Yes, $        per year (describe terms and conditions)

Are the parking facilities adequate for the project size and type?  ☒ Yes ☐ No  If No, describe and comment on the effect on value and marketability.

I ☐ did ☒ did not analyze the condominium project budget for the current year. Explain the results of the analysis of the budget (adequacy of fees, reserves, etc.), or why the analysis was not performed.  N/A

Are there any other fees (other than regular HOA charges) for the use of the project facilities?  ☐ Yes ☒ No  If Yes, report the charges and describe.

Compared to other competitive projects of similar quality and design, the subject unit charge appears  ☐ High ☒ Average ☐ Low  If High or Low, describe

Are there any special or unusual characteristics of the project (based on the condominium documents, HOA meetings, or other information) known to the appraiser?  ☐ Yes ☒ No  If Yes, describe and explain the effect on value and marketability.

Unit Charge $ 184  per month X 12 = $ 2,208.00  per year  Annual assessment charge per year per square feet of gross living area = $ 1.82
Utilities included in the unit monthly assessment  ☒ None ☐ Heat ☐ Air Conditioning ☐ Electricity ☐ Gas ☐ Water ☐ Sewer ☐ Cable ☐ Other (describe)

| General Description | Interior | materials/condition | Amenities | Appliances | Car Storage |
|---|---|---|---|---|---|
| Floor # 1 | Floors | CRPT/TILE: AVG | ☐ Fireplace(s) # | ☐ Refrigerator | ☐ None |
| # of Levels 2 | Walls | DRYWALL: AVG | ☐ WoodStove(s) # | ☒ Range/Oven | ☒ Garage ☐ Covered ☐ Open |
| Heating Type FAU  Fuel GAS | Trim/Finish | PAINT: AVERAGE | ☒ Deck/Patio | ☐ Disp ☒ Microwave | # of Cars 2 CAR GARAGE |
| ☒ Central AC ☐ Individual AC | Bath Wainscot | TILE: AVERAGE | ☐ Porch/Balcony | ☒ Dishwasher | ☐ Assigned ☒ Owned |
| ☐ Other (describe) | Doors | HOLLOW CORE: AG | ☐ Other | ☐ Washer/Dryer | Parking Space # N/A |

Finished area above grade contains:  5 Rooms  3 Bedrooms  2.5 Bath(s)  1,231 Square Feet of Gross Living Area Above Grade
Are the heating and cooling for the individual units separately metered?  ☒ Yes ☐ No  If No, describe and comment on compatibility to other projects in the market area.

Additional features (special energy efficient items, etc.)  NO ENERGY EFFICIENT ITEMS NOTED.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  SUBJECT UNIT IS MAINTAINED IN AVERAGE CONDITION.  SUBJECT FEATURES GRANITE COUNTER TOPS IN THE KITCHEN.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?  ☐ Yes ☒ No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?  ☒ Yes ☐ No  If No, describe

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  REALQUEST(FARES), MLSALLIANCE, PUBLIC RECORDS.
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  REALQUEST(FARES), MLSALLIANCE, PUBLIC RECORDS.
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | NO PRIOR TRANSFER | NO PRIOR TRANSFER | NO PRIOR TRANSFER | NO PRIOR TRANSFER |
| Price of Prior Sale/Transfer | NO PRIOR TRANSFER | NO PRIOR TRANSFER | NO PRIOR TRANSFER | NO PRIOR TRANSFER |
| Data Source(s) | REALQUEST/MLS/PUBLIC | REALQUEST/MLS/PUBLIC | REALQUEST/MLS/PUBLIC | REALQUEST/MLS/PUBLIC |
| Effective Date of Data Source(s) | 1/23/2011 | 1/23/2011 | 1/23/2011 | 1/23/2011 |

Analysis of prior sale or transfer history of the subject property and comparable sales.  SUBJECT PROPERTY HAS NOT BEEN SOLD IN THE PAST 36 MONTHS OR LISTED IN THE PAST 12 MONTHS PER REALQUEST AND MLS.

Freddie Mac Form 465 March 2005      Page 2 of 6      Fannie Mae Form 1073 March 2005

Form 1073 — *WinTOTAL* appraisal software by a la mode, inc. — 1-800-ALAMODE

## Individual Condominium Unit Appraisal Report

File # 20110124

There are **12** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 165,000 to $ 205,000
There are **29** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 159,900 to $ 208,000

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address and Unit # | 8549 SAN JACINTO CT RANCHO CUCAMONGA, CA 9173 | 8559 SAN JACINTO CT RANCHO CUCAMONGA, CA 91730 | | 8788 KNOLLWOOD DR RANCHO CUCAMONGA, CA 91730 | | 8759 KNOLLWOOD DR RANCHO CUCAMONGA, CA 91730 | |
| Project Name and Phase | Cucamonga Mountain Shadows 1 | Cucamonga Mountain Shadows 1 | | ORCHARD MEADOWS 1 | | ORCHARD MEADOWS 1 | |
| Proximity to Subject | | 0.01 miles | | 0.44 miles NE | | 0.43 miles NE | |
| Sale Price | $ N/A | | $ 195,000 | | $ 185,000 | | $ 175,000 |
| Sale Price/Gross Liv. Area | $ sq. ft. | $ 158.41 sq. ft. | | $ 136.33 sq. ft. | | $ 149.96 sq. ft. | |
| Data Source(s) | | REALQUEST / DOC#392381 | | REALQUEST / DOC#531155 | | REALQUEST / DOC#432022 | |
| Verification Source(s) | | MLS#IC10038808 / D.O.M. 117 | | MLS#I10109222 / D.O.M. 49 | | MLS#W10049170 / D.O.M. 57 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | CONV, 0% LTV $7,849 | -7,849 | FHA, 97% LTV $5,000 | -5,000 | FHA, 98% LTV $1,750 | -1,750 |
| Date of Sale/Time | | 9/22/2010 | | 12/15/2010 | | 10/19/2010 | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Leasehold/Fee Simple | Fee Simple | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| HOA Mo. Assessment | 184 | 184 | | 250 | | 263 | |
| Common Elements and Rec. Facilities | POOL, CMMN AREAS | POOL, CMMN AREAS | | POOL, CMMN AREAS | | POOL, CMMN AREAS | |
| Floor Location | FIRST | FIRST | | FIRST | | FIRST | |
| View | RESIDENTIAL | RESIDENTIAL | | RESIDENTIAL | | RESIDENTIAL | |
| Design (Style) | MODERN | MODERN | | MODERN | | MODERN | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Actual Age | 23 | 23 | | 25 | | 25 | |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Above Grade Room Count | Total 5 / Bdrms 3 / Baths 2.5 | Total 5 / Bdrms 3 / Baths 2.5 | | Total 5 / Bdrms 3 / Baths 2.5 | | Total 4 / Bdrms 2 / Baths 1.5 | +8,000 |
| Gross Living Area | 1,210 sq. ft. | 1,231 sq. ft. | | 1,357 sq. ft. | -4,000 | 1,167 sq. ft. | +2,000 |
| Basement & Finished Rooms Below Grade | NONE NONE | 0 SQ. FT. 0% | | 0 SQ. FT. 0% | | 0 SQ. FT. 0% | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | FAU/CAC | FAU/CAC | | FAU/CAC | | FAU/CAC | |
| Energy Efficient Items | NONE | NO E.E. ITEMS | | NO E.E. ITEMS | | NO E.E. ITEMS | |
| Garage/Carport | 2 CAR / NONE | 2 CAR / 0 CAR | | 2 CAR / 0 CAR | | 2 CAR / 0 CAR | |
| Porch/Patio/Deck | PATIO | PATIO | | PATIO | | PATIO | |
| List Price, SP/LP % | N/A | 189900, 103% | | 179900, 103% | | 189900, 92% | |
| Contract Date per Realquest | N/A | 9/20/2010 | | 11/22/2010 | | 8/6/2010 | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -7,849 | ☐ + ☒ - | $ -9,000 | ☒ + ☐ - | $ 8,250 |
| Adjusted Sale Price of Comparables | | Net Adj. 4.0 % Gross Adj. 4.0 % | $ 187,151 | Net Adj. 4.9 % Gross Adj. 4.9 % | $ 176,000 | Net Adj. 4.7 % Gross Adj. 6.7 % | $ 183,250 |

Summary of Sales Comparison Approach   AN INVESTIGATION OF THE MARKET INDICATED THE COMPARABLES UTILIZED TO BE THE MOST
RECENT, SIMILAR AND PROXIMATE TO THE SUBJECT PROPERTY. DATA WAS COLLECTED FROM A VARIETY OF SOURCES
INCLUDING BUT NOT LIMITED TO, MULTIPLE LISTING SYSTEMS, TAX ASSESSORS RECORDS, LOCAL REAL ESTATE BROKERS AND
VARIOUS PUBLIC RECORDS.

Indicated Value by Sales Comparison Approach $  180,000

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $  NOT DEV.   X Gross Rent Multiplier  NOT DEV.  = $  NOT DEVELOPED   Indicated Value by Income Approach
Summary of Income Approach (including support for market rent and GRM)  NOT DEVELOPED.

Indicated Value by: Sales Comparison Approach $  180,000   Income Approach (if developed) $  NOT DEVEL
PRIMARY CONSIDERATION WAS GIVEN TO THE SALES COMPARISON APPROACH TO VALUE AS THIS APPROACH BEST REFLECTS
THE MOST ACCURATE INDICATOR OF MARKET ACTIVITY.

This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed,  ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  NO CONDITIONS REQUIRED.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$  180,000 , as of  1/23/2011 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 465 March 2005                    Page 3 of 6                    Fannie Mae Form 1073 March 2005

## Individual Condominium Unit Appraisal Report

File # 20110124

This report form is designed to report an appraisal of a unit in a condominium project or a condominium unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject unit, (2) inspect and analyze the condominium project, (3) inspect the neighborhood, (4) inspect each of the comparable sales from at least the street, (5) research, verify, and analyze data from reliable public and/or private sources, and (6) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Individual Condominium Unit Appraisal Report    File # 20110124

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

### Individual Condominium Unit Appraisal Report

File # 20110124

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _Nick Greenhagen_ | Signature _____ |
| Name  NICK GREENHAGEN | Name _____ |
| Company Name   NICK GREENHAGEN | Company Name _____ |
| Company Address   5811 BOCA RATON WAY, FONTANA, CA | Company Address _____ |
| 92336 | _____ |
| Telephone Number  (909) 262-4260 | Telephone Number _____ |
| Email Address  nick@myappraisers.com | Email Address _____ |
| Date of Signature and Report    January 24, 2011 | Date of Signature _____ |
| Effective Date of Appraisal   1/23/2011 | State Certification # _____ |
| State Certification #  AR041134 | or State License # _____ |
| or State License # _____ | State _____ |
| or Other _____ State # _____ | Expiration Date of Certification or License _____ |
| State  CA | |
| Expiration Date of Certification or License    9/12/2012 | SUBJECT PROPERTY |
| | [ ] Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | [ ] Did inspect exterior of subject property from street |
| 8549 SAN JACINTO CT, # N/A | Date of Inspection _____ |
| RANCHO CUCAMONGA, CA 91730-4338 | [ ] Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $    180,000 | Date of Inspection _____ |
| LENDER/CLIENT | |
| Name _____ | COMPARABLE SALES |
| Company Name   CARLOS BANUELOS JR | [ ] Did not inspect exterior of comparable sales from street |
| Company Address   8549 SAN JACINTO CT, RANCHO | [ ] Did inspect exterior of comparable sales from street |
| CUCAMONGA, CA | Date of Inspection _____ |
| Email Address _____ | |

Form 1073 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Individual Condominium Unit Appraisal Report

File # 20110124

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address and | 8549 SAN JACINTO CT | 8354 GABRIEL DR C | | 8551 SAN GORGONIO PL | | 8533 SALINA ST | |
| Unit # | RANCHO CUCAMONGA, CA 9173 | RANCHO CUCAMONGA, CA 91730 | | RANCHO CUCAMONGA, CA 91730 | | RANCHO CUCAMONGA, CA 91730 | |
| Project Name and | Cucamonga Mountain Shadows | VILLA GABRIEL | | Cucamonga Mountain Shadows | | Cucamonga Mountain Shadows | |
| Phase | 1 | 1 | | 1 | | 1 | |
| Proximity to Subject | | 0.24 miles NW | | 0.04 miles E | | 0.05 miles S | |
| Sale Price | $       N/A | | $       169,000 | | $       175,000 | | $       189,900 |
| Sale Price/Gross Liv. Area | $       sq. ft. | $  164.08 sq. ft. | | $  142.16 sq. ft. | | $  154.26 sq. ft. | |
| Data Source(s) | | REALQUEST / DOC#397645 | | MLS/PUBLIC RECORDS | | MLS/PUBLIC RECORDS | |
| Verification Source(s) | | MLS#K10050182 / D.O.M. 12 | | MLS#K10074043 / D.O.M. 207 | | MLS#C10049979 / D.O.M. 259 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | FHA, 102% LTV | | BACKUP | | ACTIVE | |
| Concessions | | $0 | | OFFERS | | LISTING | |
| Date of Sale/Time | | 9/24/2010 | | 9/8/2010 | | 5/19/2010 | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Leasehold/Fee Simple | Fee Simple | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| HOA Mo. Assessment | 184 | 226 | | 184 | | 184 | |
| Common Elements | POOL, CMMN | POOL, CMMN | | POOL, CMMN | | POOL, CMMN | |
| and Rec. Facilities | AREAS | AREAS | | AREAS | | AREAS | |
| Floor Location | FIRST | FIRST | | FIRST | | FIRST | |
| View | RESIDENTIAL | RESIDENTIAL | | RESIDENTIAL | | RESIDENTIAL | |
| Design (Style) | MODERN | MODERN | | CONV | | CONV | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Actual Age | 23 | 20 | | 24 | | 24 | |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | | Total | Bdrms. | Baths | | Total | Bdrms. | Baths | |
| Room Count | 5 | 3 | 2.5 | 5 | 2 | 2.5 | +4,000 | 5 | 3 | 2.5 | | 5 | 3 | 2.5 | |
| Gross Living Area | 1,210 sq. ft. | 1,030 sq. ft. | +6,000 | 1,231 sq. ft. | | 1,231 sq. ft. | |
| Basement & Finished | NONE | 0 SQ. FT. | | 0 SQ. FT. | | 0 SQ. FT. | |
| Rooms Below Grade | NONE | 0% | | 0% | | 0% | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | FAU/CAC | FAU/CAC | | FAU/CAC | | FAU/CAC | |
| Energy Efficient Items | NONE | NO E.E. ITEMS | | NO E.E. ITEMS | | NO E.E. ITEMS | |
| Garage/Carport | 2 CAR / NONE | 2 CAR / 0 CAR | | 2 CAR / 0 CAR | | 2 CAR / 0 CAR | |
| Porch/Patio/Deck | PATIO | PATIO | | PATIO | | PATIO | |
| List Price, SP/LP % | N/A | 169000, 100% | | 0% L.P. Adjust. | | 0% L.P. Adjust. | |
| Contract Date per Realquest | N/A | 9/16/2010 | | BKUP OFFERS | | ACTIVE | |
| Net Adjustment (Total) | | ☒ + ☐ - | $       10,000 | ☐ + ☐ - | $ | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj. 5.9 % | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. 5.9 % | $  179,000 | Gross Adj. % | $  175,000 | Gross Adj. % | $  189,900 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | NO PRIOR TRANSFER | NO PRIOR TRANSFER | NO PRIOR TRANSFER |
| Price of Prior Sale/Transfer | | NO PRIOR TRANSFER | NO PRIOR TRANSFER | NO PRIOR TRANSFER |
| Data Source(s) | | REALQUEST/MLS/PUBLIC | REALQUEST/MLS/PUBLIC | REALQUEST/MLS/PUBLIC |
| Effective Date of Data Source(s) | 1/23/2011 | 1/23/2011 | 1/23/2011 | 1/23/2011 |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

Freddie Mac Form 465 March 2005

Fannie Mae Form 1073 March 2005

Form 1073.(AC) — *WinTOTAL* appraisal software by a la mode, inc. — 1-800-ALAMODE

### Supplemental Addendum

File No. 20110124

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 8549 SAN JACINTO CT | | | | |
| City | RANCHO CUCAMONGA | County SAN BERNARDINO | State CA | Zip Code 91730-4338 | |
| Lender | CARLOS BANUELOS JR | | | | |

**• PURPOSE AND FUNCTION**
THE PURPOSE OF THE APPRAISAL IS TO ESTIMATE THE MARKET VALUE OF THE SUBJECT PROPERTY AS DEFINED
HEREIN. THE INTENDED USE OF THIS APPRAISAL IS TO ASSIST THE CLIENT IN EVALUATING THE SUBJECT
PROPERTY. THE INTENDED USERS OF THIS APPRAISAL REPORT ARE THE CLIENT. NO ADDITIONAL INTENDED USE
OR USERS ARE IDENTIFIED BY THE APPRAISER. THIS APPRAISAL IS IDENTIFIED AND CATEGORIZED AS A
COMPLETE APPRAISAL, PRESENTED IN A SUMMARY APPRAISAL REPORT, AS DEFINED AND REGULATED UNDER
STANDARD RULE 2-2(B) OF THE UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE, EFFECTIVE JULY
1, 1994.  EXTENSIVE BACKGROUND DATA, REASONING AND ANALYSIS DEVELOPED IN THE APPRAISAL PROCESS
FOR THIS VALUATION ARE NOT NECESSARILY INCLUDED IN THIS SUMMARY REPORT.  THIS APPRAISAL REPORT
CAN BE USED AS A SAMPLE OF THE APPRAISER'S WORK ON A LIMITED BASIS AND SHOW ONLY TO HIS/HER
PROSPECTIVE CLIENTS FOR THAT PURPOSE.  TO THE BEST OF MY KNOWLEDGE AND BELIEF:  I HAVE NOT
PERFORMED ANY PRIOR SERVICES REGARDING THE SUBJECT PROPERTY, AS AN APPRAISER, OR IN ANY OTHER
CAPACITY, WITHIN THE 3 YEAR PERIOD IMMEDIATELY PRECEDING ACCEPTANCE OF THIS APPRAISAL
ASSIGNMENT.

**• Condo : Neighborhood - Market Conditions**
PROPERTY VALUES APPEAR TO BE STABILIZING.  SUPPLY/DEMAND APPEARS TO BE IN BALANCE.  TYPICAL
MARKETING TIME FOR SIMILAR PROPERTIES IN THE NEIGHBORHOOD IS ESTIMATED AT ONE TO SIX MONTHS,
BASED ON COMPARABLE SALES.

**• CONDITION OF IMPROVEMENTS**  NO SIGNS OF PHYSICAL INADEQUACIES NOTED DURING PHYSICAL INSPECTION.
NO SIGNS OF FUNCTIONAL OBSOLESCENCE WERE NOTED THAT WOULD AFFECT THE VALUE OF SUBJECT
PROPERTY.  ENERGY EFFICIENT ITEMS, PLUMBING OR ELECTRICAL CONDITIONS NOT DETERMINED BY
APPRAISER, ADEQUACY PRESUMED TO BE AVERAGE.

**• ADVERSE ENVIRONMENTAL CONDITIONS**  THE APPRAISER HAS NOT BECOME AWARE OF ANY
ADVERSE ENVIRONMENTAL CONDITIONS DURING THE RESEARCH NECESSARY TO COMPLETE THIS
REPORT.  IT SHOULD BE NOTED, HOWEVER, THAT THE APPRAISER IS NOT AN EXPERT IN THIS FIELD
OF ENVIRONMENTAL HAZARDS AND THE APPRAISAL REPORT IS NOT TO BE CONSIDERED AN ENVIRONMENTAL
ASSESSMENT OF THE PROPERTY.

**SALES COMPARISON COMMENTS**: ALL COMPARABLES USED ARE SIMILAR TO THE SUBJECT IN QUALITY OF
CONSTRUCTION AND APPEAL.  ALL COMPARABLES ARE RECORDED AND CONSIDERED THE MOST RECENT,
RELEVANT SALES OBTAINABLE IN THE SUBJECT'S MARKET AREA.  THE SALES USED IN THIS REPORT WERE NOT
ENTIRELY SIMILAR TO THE SUBJECT PROPERTY.  HOWEVER, WITH ADJUSTMENTS, THE SALES REPRESENT A
REASONABLE CLOSE ADJUSTED RANGE OF VALUE.  NO ADJUSTMENT HAS BEEN MADE FOR OVERALL ROOM
COUNT AS THIS IS TAKEN INTO CONSIDERATION IN THE GROSS LIVING AREA DIFFERENCE CALCULATED AT $30.00
SQ FT (ROUNDED).  BEDROOMS AND BATHROOMS ADJUSTED AT $4,000 PER.

COMPARABLE #1 WAS GIVEN THE MOST WEIGHT AS IT WAS WITHIN THE SUBJECT'S COMMUNITY AND ON THE
SUBJECT'S STREET.  COMPARABLE #2 IS THE MOST RECENT SALE IN THE SUBJECT'S NEIGHBORHOOD.
COMPARABLES #3 AND #4 WERE UTILIZED FOR ADDITIONAL SUPPORT.  COMPARABLES #5 AND #6 ARE CURRENT
LISTINGS AND WERE INCLUDED IN THIS REPORT TO SHOW CURRENT MARKET TRENDS.  COMPARABLE #5 WAS
ORIGINALLY LISTED ON 7/12/2010 FOR $190,000 AND WAS ADJUSTED TO $175,000 ON 8/7/2010.  CURRENT DAYS ON
MARKET 169.  COMPARABLE #6 WAS ORIGINALLY LISTED ON 5/10/2010 FOR $214,900 AND WAS ADJUSTED TO
$189,900 ON 8/29/2010.  CURRENT DAYS ON MARKET 147.

IN FINAL ESTIMATE, VALUE WAS DETERMINED USING A WEIGHTED AVERAGE OF ADJUSTED SALES PRICE WITH ALL
COMPARABLES TAKEN INTO CONSIDERATION.

APPRAISAL IS SIGNED BY A PASSWORD PROTECTED SIGNATURE.

### Building Sketch

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 8549 SAN JACINTO CT | | | | |
| City | RANCHO CUCAMONGA | County SAN BERNARDINO | State CA | Zip Code 91730-4338 | |
| Lender | CARLOS BANUELOS JR | | | | |



**Plat Map**

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 8549 SAN JACINTO CT | | | | | |
| City | RANCHO CUCAMONGA | County | SAN BERNARDINO | State | CA | Zip Code 91730-4338 |
| Lender | CARLOS BANUELOS JR | | | | | |



## Subject Photo Page

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 8549 SAN JACINTO CT | | | | |
| City | RANCHO CUCAMONGA | County  SAN BERNARDINO | | State  CA | Zip Code  91730-4338 |
| Lender | CARLOS BANUELOS JR | | | | |



**Subject Front**

8549 SAN JACINTO CT

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,210 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | AVERAGE |
| View | RESIDENTIAL |
| Site | UNITS/CNDO |
| Quality | AVERAGE |
| Age | 23 |



**Subject Rear**



**Subject Street**

## Subject Interior Photo Page

| Borrower/Client | N/A |
|---|---|
| Property Address | 8549 SAN JACINTO CT |
| City | RANCHO CUCAMONGA | County | SAN BERNARDINO | State | CA | Zip Code | 91730-4338 |
| Lender | CARLOS BANUELOS JR |



**Subject Interior Living Room**

8549 SAN JACINTO CT

| Sales Price | N/A |
|---|---|
| Gross Living Area | 1,210 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | AVERAGE |
| View | RESIDENTIAL |
| Site | UNITS/CNDO |
| Quality | AVERAGE |
| Age | 23 |



**Subject Interior Kitchen**



**Subject Interior Master Bath**

**Photograph Addendum**

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 8549 SAN JACINTO CT |
| City | RANCHO CUCAMONGA | County SAN BERNARDINO | State CA | Zip Code 91730-4338 |
| Lender | CARLOS BANUELOS JR |



ASSOCIATION POOL

## Location Map

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 8549 SAN JACINTO CT | | | | |
| City | RANCHO CUCAMONGA | County SAN BERNARDINO | State CA | Zip Code 91730-4338 | |
| Lender | CARLOS BANUELOS JR | | | | |



## Comparable Photo Page

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 8549 SAN JACINTO CT | | | | |
| City | RANCHO CUCAMONGA | County | SAN BERNARDINO | State CA | Zip Code 91730-4338 |
| Lender | CARLOS BANUELOS JR | | | | |



### Comparable 1

8559 SAN JACINTO CT

| Prox. to Subject | 0.01 miles |
|---|---|
| Sales Price | 195,000 |
| Gross Living Area | 1,231 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | AVERAGE |
| View | RESIDENTIAL |
| Site | 2000 SQ. FT. |
| Quality | AVERAGE |
| Age | 23 |



### Comparable 2

8788 KNOLLWOOD DR

| Prox. to Subject | 0.44 miles NE |
|---|---|
| Sales Price | 185,000 |
| Gross Living Area | 1,357 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | AVERAGE |
| View | RESIDENTIAL |
| Site | 2000 SQ. FT. |
| Quality | AVERAGE |
| Age | 25 |



### Comparable 3

8759 KNOLLWOOD DR

| Prox. to Subject | 0.43 miles NE |
|---|---|
| Sales Price | 175,000 |
| Gross Living Area | 1,167 |
| Total Rooms | 4 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.5 |
| Location | AVERAGE |
| View | RESIDENTIAL |
| Site | 2000 SQ. FT. |
| Quality | AVERAGE |
| Age | 25 |

## Comparable Photo Page

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 8549 SAN JACINTO CT |
| City | RANCHO CUCAMONGA |
| County | SAN BERNARDINO |
| State | CA |
| Zip Code | 91730-4338 |
| Lender | CARLOS BANUELOS JR |



### Comparable 4

8354 GABRIEL DR C
| | |
|---|---|
| Prox. to Subject | 0.24 miles NW |
| Sales Price | 169,000 |
| Gross Living Area | 1,030 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.5 |
| Location | AVERAGE |
| View | RESIDENTIAL |
| Site | 1030 SQ. FT. |
| Quality | AVERAGE |
| Age | 20 |



### Comparable 5

8551 SAN GORGONIO PL
| | |
|---|---|
| Prox. to Subject | 0.04 miles E |
| Sales Price | 175,000 |
| Gross Living Area | 1,231 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | AVERAGE |
| View | RESIDENTIAL |
| Site | 2000 SQ. FT. |
| Quality | AVERAGE |
| Age | 24 |



### Comparable 6

8533 SALINA ST
| | |
|---|---|
| Prox. to Subject | 0.05 miles S |
| Sales Price | 189,900 |
| Gross Living Area | 1,231 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | AVERAGE |
| View | RESIDENTIAL |
| Site | 2000 SQ. FT. |
| Quality | AVERAGE |
| Age | 24 |



Business, Transportation & Housing Agency

# OFFICE OF REAL ESTATE APPRAISERS

## REAL ESTATE APPRAISER LICENSE

### NICHOLAS P. GREENHAGEN

has successfully met the requirements for a license as a residential real estate appraiser in the State of California and is, therefore, entitled to use the title "Certified Residential Real Estate Appraiser"

This license has been issued in accordance with the provisions of the Real Estate Appraisers' Licensing and Certification Law

OREA APPRAISER IDENTIFICATION NUMBER    AR004113A

Date Issued    September 10, 2010
Date Expires    September 09, 2012

*Bob Clark*

Director, OREA



**GENERAL STAR NATIONAL INSURANCE COMPANY**
Financial Centre
P.O. Box 10360
Stamford, Connecticut 06904-2360

## REAL ESTATE APPRAISERS ERRORS & OMISSIONS INSURANCE POLICY

### DECLARATIONS PAGE

This is a claims made and reported policy. Please read this policy and all endorsements and attachments carefully.

Policy Number:   NJ A942916D                    Renewal of Number    NJ A942916C

1. **NAMED INSURED:**          Nicholas Greenhagen
   **STREET ADDRESS:**          5811 Boca Raton Way
                                Fontana, CA 92336

2. **POLICY PERIOD:**  Inception Date:  10/02/2010        **Expiration Date:**        10/02/2011

   Effective 12:01 a.m. Standard Time at the address of the Named Insured.

3. **LIMIT OF LIABILITY:**
   Each Claim:        $ 1,000,000
   Aggregate:         $ 2,000,000
   Claim Expenses have a separate Limit of Liability.
   Each Claim:        $ 1,000,000
   Aggregate:         $ 2,000,000

4. **DEDUCTIBLE:**          Each Claim  $500.00        Aggregate:  $1,000.00

5. **RETROACTIVE DATE:**  10/02/2006

   If a date is indicated, this policy will not provide coverage for any Claim arising out of any act, error, omission or personal injury which occurred before such date.

6. **ANNUAL PREMIUM:**        $    915.00

7. **ENDORSEMENTS:**
   This policy is made and accepted subject to the printed policy form together with the following form(s) or endorsement(s)
   GISN-07-AP-122(07/2007)
   GISN-07-AP-375 (10/2007)

8. **MANAGING AGENT**
   Herbert H. Landy Insurance Agency, Inc.
   75 Second Avenue, Suite 410

   Needham, Massachusetts 02494-2876

   _Betsy a _____

   ------------------------------
   Authorized Representative

GSN-07-AP-720 (06/2007)    © Copyright 2007, General Star Management Company, Stamford, CT        Page 1 of 1
Producer Code 60026230                                              Class Code 73128
Date 07/14/2010                                                     SLA#

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.
My business address is : *633 West Fifth Street, Suite 26072 Los Angeles, CA 90071.*
The foregoing document described **NOTICE OF MOTION AND MOTION TO DETERMINE SECURED VALUE OF "VEGAS" REAL PROPERTY OF THE ESTATE; AND TO STAY POST PETITIONPAYMENTS; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATIONS OF CARLOS BANUELOS AND NICK GREENHAGEN AND EXHIBIT (S) IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**</u>
**XX**– Pursuant to controlling General Order(s)  and Local Bankruptcy Rule(s) (LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July __15__, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s0 are on the Electronic Mail Notice List to receive NEF transmission all the email address(es) indicated below:

<u>XX</u> Service information continued on attached page

II. <u>**SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person entity served)**</u>: On July __15__, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

Chambers of Honorable Catherine Bauer (courtesy copy)          Carlos Banuelos
3420 Twelfth Street                                                                              8529 San Jacinto Court
Riverside, California 92501                                                               Rancho Cucamonga, CA 91730
                                                <u>XX</u> Service information continued on attached page

III <u>**SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL**</u>
(indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented In writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

____ Service information continued on attached page
I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

__7/15/11__   MIROSARY SALAZAR                                      _(signature)_
*Date*              *Type Name*                                                         *Signature*

*MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY*

14

1

## SERVICE LIST

2

<u>VIA NEF</u>

3

Aurora Talavera, <u>aurora@theauroralawgroup.com</u>

4

Abram Feuerstein, U.S. Trustee, <u>abram.s.feuerstein@usdoj.gov</u>

5

U.S. Trustee (Riverside) <u>ustpregion16rs.ecf@usdoj.gov</u>

6

7

8

<u>VIA REGULAR MAIL</u>

9

10  CITI MORTGAGE
    P.O. BOX 0251
11  Gaithersburg, MD20884

12  CITI MORTGAGE
    P.O. Box 6241
13  Sioux Falls, SC 57117

14  CHASE MORTGAGE
    P.O. Box 24785
15  Columbus, OH 43224

16  JP Morgan Chase Bank, NA
    Alvarado & Associates, LLP
17  1 Mac Arthur Place, Ste. 210
    Santa Ana, CA 92707
18

19

20

21

22

23

24

25

26

27

28              *MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY*